IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| CHRISTOPHER CENTUORI,<br><br>　　　　Plaintiff,<br><br>vs.<br><br>EXPERIAN INFORMATION SOLUTIONS, INC., et. al.,<br><br>　　　　Defendants. | No. CIV 04-013-TUC-CKJ<br><br>**ORDER** |

Pending before the Court is Plaintiff's Motion to Compel. For the reasons stated below, the motion is granted.

I. **BACKGROUND**

This case arises under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, *et. seq.* The FCRA states that one can not obtain or use a credit report without a permissible purpose; compensatory damages can be awarded for negligent violation of the FCRA, and punitive damages can be awarded for willful violation of the FCRA. *See* 15 U.S.C. §§1681b(f), 1681n. Plaintiff, Christopher Centuori, alleges that the FCRA was willfully violated by the Pima County Public Defender's Office by requesting and using his credit reports in an attempt to discredit him in a criminal trial. Plaintiff alleges that he was a witness in a criminal trial whereby he testified that his daughter was molested by Robert Lemon ("Lemon"). Plaintiff alleges that the Public Defender representing Lemon, Donald

Klein ("<u>Klein</u>")(Klein and the Pima County Public Defender are hereinafter collectively referred to as "<u>Defendants</u>"), obtained copies of Plaintiff's credit report to support his theory that the molestation was concocted to set up a later civil suit for damages because of Plaintiff's financial problems.

As discovery has progressed, Plaintiff has attempted to obtain information from Klein and two investigators (<u>Lasky</u> and <u>Gardner</u>) who worked with Klein relating to "why" the credit reports in question were obtained. Defendants object to discovery of this information on the grounds of attorney-client privilege and work product. Plaintiff argues, however, that these protections have been waived.

## II. ANALYSIS

### A. Waiver

Issues concerning the application of the attorney-client privilege in adjudicating disputes over federal law are governed by federal common law. *See Clarke v. American Commerce National Bank*, 974 F.2d 127, 129 (9th Cir. 1992). Under the attorney-client privilege, "confidential communications made by a client to an attorney to obtain legal services are protected from disclosure . . . Because the attorney-client privilege has the effect of withholding relevant information from the factfinder, it is applied only when necessary to achieve its limited purposes of encouraging full and frank disclosure by the client to his attorney." *Id.* "The party asserting the privilege has the burden to prove that the privilege applies . . . the attorney-client privilege is strictly construed." *United States v. Plache*, 913 F.2d 1375, 1379 (9th Cir. 1990). "Accordingly, it has been widely held that voluntary disclosure of the content of a privileged attorney communication constitutes waiver of the privilege as to all other such communications on the same subject." *Weil v. Investment/Indicators, Research and Management, Inc.*, 647 F.2d 18, 24 (9th Cir. 1981). The party asserting that the attorney-client privilege applies "must prove that it has not waived the privilege." *Id.* at 25.

|   |   |
|---|---|
| 1 | Waiver by voluntary disclosure "occurs when a party discloses privileged information to a third party who is not bound by the privilege, or otherwise shows disregard for the privilege by making the information public . . . once documents have been turned over to another party voluntarily, the privilege is gone, and the litigant may not thereafter reassert it to block discovery of the information and related communications by his adversaries." *Bittaker v. Woodford*, 331 F.3d 715, 719 and 719 n.4 (9th Cir. 1981). Waiver by voluntary disclosure "need not be effectuated by words or accompanied by the litigant's subjective intent . . . Rather, the privilege may be waived by the client's, and in some cases the attorney's, actions, even if the disclosure that gave rise to the waiver was inadvertent." *Id.* at 719 n.4; *see also United States v. Bump*, 605 F.2d 548, 551 (10th Cir. 1979)(holding that the attorney-client privilege was waived when the attorney disclosed privileged attorney-client information to the government and there was no evidence in the record showing that the client had objected to such disclosure or that such disclosure was otherwise without the client's consent). |

        In this case, Defendants have failed to meet its burden of showing that the attorney-client privilege was not waived. *Weil*, 647 F.2d at 24. Besides arguing that the attorney-client privilege is absolute, Defendants have not shown how the disclosures which have already occurred have not resulted in a waiver. As the Plaintiff correctly argues, Defendants have already essentially disclosed "why" they obtained the credit reports at issue; however, Defendants now claim that "why" they sought the credit reports in question is covered by the attorney-client privilege, and therefore they refuse to disclose such information. During the criminal trial of Lemon, the County Attorney objected to Defendants' use of Centuori's credit report. In this context, Klein explained to the judge that "[i]t is our theory his financial straits are the reason why these accusations have been made . . ." *See* Plaintiff's Exhibit 7. This prompted a complaint by the County Attorney to Credit Data Southwest ("CDS"), the credit reporting agency which issued the reports in question. *See* Plaintiff's Exhibit 8. CDS thereafter conducted an audit, and sent a letter to Defendants which stated in part:

> The Federal Trade Commission (FTC) has very strict guidelines regarding compliance with the Fair Credit Report Act (FCRA). [CDS] will audit its members in order to certify that reports are obtained in accordance with the purposes and methods provided . . . under the FCRA . . . This audit will determine if members are complying with the agreement they signed and whether a credit file was accessed for a "permissible purpose" . . . On January 9, 2002 and again on August 6, 2002 you accessed into the credit file of Christopher Centuori. Please respond in writing as to the **purpose of these inquiries** . . .

See Plaintiff's Exhibit 9 (emphasis added). In a written response, Lasky and Klein stated in part that:

> Mr. Centauri is the father of the alleged victim and an alleged eyewitness to the alleged criminal acts. It was the defense's assertion that Mr. Centauri's precarious state of finances and Mr. Lemmon's assets may have been a motivating factor driving the victim's family to support prosecution against our client.

See Plaintiff's Exhibit 10.

In light of these previous disclosures, it is clear that Defendants have already disclosed "why" these credit reports were obtained. The Court also notes that these disclosures were made while Lemon was still alive, and Defendants have not introduced any evidence showing that Lemon objected to these disclosures or that he otherwise did not consent to such disclosures. In light of these facts, waiver has occurred by way of voluntary disclosure. *See, e.g., Bittaker*, 331 F.3d at 719 and 719 n.4; *Bump*, 605 F.2d at 551 (holding that the attorney-client privilege was waived when the attorney disclosed privileged attorney-client information to the government and there was no evidence in the record showing that the client had objected to such disclosure or that such disclosure was otherwise without the client's consent); *Weil*, 647 F.2d at 23-25 (through a letter and a deposition, it was disclosed that the attorney advised the client that it should register certain securities pursuant to the Blue Sky laws of various states; in light of this previous disclosure, the court held that the attorney-client privilege was waived as to the substance of Blue Sky counsel's advice regarding registration of the securities in question pursuant to Blue Sky laws); *United States v. Plache*, 913 F.2d 1375, 1379-1380 (9th Cir. 1990)(before a grand jury, the client disclosed that his attorney was concerned that the client's program constituted an exempt security;

based on this disclosure, the court held that the attorney-client privilege was waived "on all other communications on the same subject.").

Accordingly, the Court holds that the attorney-client privilege has been waived as to "why" the credit reports at issue in this case were initially obtained. Furthermore, "many of the reasons for disallowing selective waiver in the attorney-client privilege context also apply to the work product doctrine . . . the work-product doctrine should be no more stringent than the standard for waiving the attorney-client privilege–once the privilege is waived, waiver is final and complete." *In re Columbia/HCA Healthcare Corporation Billing Practices Litigation*, 293 F.3d 289, 306-307 (6th Cir. 2002)(citations and internal quotations omitted).[1] As such, for the reasons that the attorney-client privilege has been waived, the Court also finds that the work product privilege has been waived as to "why" the credit reports at issue in this case were initially obtained. *See id.*

### III. CONCLUSION

Accordingly, IT IS HEREBY ORDERED as follows:

(1) Plaintiff's Motion to Compel is **granted**. Defendants shall disclose "why" the credit reports at issue in this case were initially obtained.

DATED this 29th day of October, 2004.

Cindy K. Jorgenson
United States District Judge

---

[1] Although some courts may be more stringent regarding waiver of the work product doctrine, the Court finds the more recent approach in *In re Columbia/HCA Healthcare Corporation Billing Practices Litigation* to be more persuasive.